SCHMOHL v. BUSCOMI et al.

(Supreme Court, Appellate Division, First Department. June 18, 1909.)

1. SALES (§ 181*)—CONTRACTS—PERFORMANCE—EVIDENCE.

In an action for the price of lime sold and delivered, evidence *held* to show a delivery of lime of the standard and grade called for by the contract, authorizing a recovery for the price notwithstanding a counterclaim based on damages claimed to have resulted from the delivery of lime of a different grade.

[Ed. Note.—For other cases, see Sales, Dec. Dig. § 181.*]

2. TRIAL (§ 202*)—INSTRUCTIONS.

Ordinarily, it is not error to refuse to instruct the jury as to what will be the consequences of their verdict.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 486; Dec. Dig. § 202.*]

3. SALES (§ 364*)—ACTION FOR PRICE—EVIDENCE—INSTRUCTIONS.

Where a seller of building materials sued for the price, and the buyer pleaded an accord and satisfaction based on his assignment to the seller of a claim against a third person, and the seller claimed that the assignment was taken as collateral security and not in full satisfaction, and the evidence on the issue was conflicting, the court on request must charge that the jury, on finding that the assignment was taken as security, must require the seller to account to the buyer for the amount received under the assignment.

[Ed. Note.—For other cases, see Sales, Dec. Dig. § 364.*]

Appeal from Trial Term, New York County.

Action by William Schmohl against Vincent Buscomi and another. From a judgment for defendants, and from an order denying a new trial, plaintiff appeals. Reversed, and new trial granted.

Argued before INGRAHAM, McLAUGHLIN, LAUGHLIN, HOUGHTON, and SCOTT, JJ.

Frank Barker, for appellant.

Charles L. Hoffman (Henry A. Friedman, on the brief), for respondents.

LAUGHLIN, J. The defendants were copartners, engaged in conducting the business of plastering, and the plaintiff was a dealer in materials and supplies used by masons and plasterers. The action is brought for a balance of account alleged to have been due and owing from the defendants to the plaintiff on the 13th day of February, 1903, for plasterers' building material, amounting to the sum of $1,875.26. The defendants interposed an answer, in effect admitting the account as alleged, but alleging, among other things, that under orders for "Rockland" lime the plaintiff delivered to them other lime, and that they were unable to discover that the material delivered was not the material which they ordered, until after it had been made into plaster and used, when portions of it fell, resulting in damages to the defendants in the sum of $2,400.

Upon the trial, the plaintiff gave evidence tending to show, in accordance with the allegations of his complaint, that on the 13th day of February, 1903, the defendants were indebted to him in the amount

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

claimed for a balance of account. The defendants gave evidence tending to show that plaster on different jobs, in the making of which Rockland lime purchased by them from the plaintiff was used, fell or proved defective, rendering it necessary to do the work over again, and for which, according to the testimony of the defendant Buscomi, they expended the sum of $2,694.25 for labor, and used material of the value of $509.05. Thus the claim of the plaintiff, with interest, aggregated at the time of the trial $2,516.90, and the only evidence with respect to the precise amount of the damages sustained by the defendants on account of the matters set forth in their counterclaim showed the same to be the sum of $3,203.30; and this, it is to be borne in mind, was not the opinion of the witness, but was an actual calculation of a precise amount. While it is within the province of the jury to estimate the damages, and they were not bound by the testimony of one of the defendants, yet in the case at bar it would seem that the action of the jury in reducing the defendants' claim on their counterclaim to just $10 more than the plaintiff's claim, and awarding a verdict for the balance, if that be the theory upon which the verdict was rendered, was arbitrary.

We are also of opinion that the verdict is against the weight of the evidence. Rockland lime was a standard grade of lime, and suitable and in common use for the purpose for which the defendants desired to and did use it. It appears by the evidence that the defendants, either as a firm or in conducting business separately, used large quantities of it, both before and after this time, with satisfactory results. It is not claimed that all of the lime furnished proved to be unsatisfactory, but only part of it on certain jobs of work. The plaintiff showed by the testimony of the agent who sold the Rockland lime that it was shipped in barrels from Rockland, Me.; that it was all first-class, merchantable lime, and that every barrel was branded with the name; and he himself testified that he delivered the lime to his customers without opening the barrels, and that it was properly handled and delivered to the defendants in the same condition in which he received it. The defendants attempted to overcome this evidence by calling numerous witnesses who gave testimony tending to show that the mortar, so far as they observed, was always mixed in the same manner and with the same proportion of material. There was no evidence indicating that any of the barrels, when delivered to the defendants were not in the same condition as when put up for shipment. Numerous items of irrelevant evidence were introduced by the defendants, which may have misled the jury. The claim was evidently made upon the trial that the plaintiff must have opened and refilled some of the barrels with other lime before delivering them to the defendants, and a witness testified to having been in the plaintiff's place of business on one occasion and having seen men shoveling lime into barrels. The plaintiff testified that he never opened an original package, and that no lime was shoveled into barrels in his place of business; but he was asked by counsel for defendants if he did not buy empty lime barrels, and he admitted that he did, but said that he only used them in delivering sand. No witness testified that there was anything in the appearance of any of the barrels or of any of the lime indicating either that the package had been

opened, or that the lime was not suitable for use, or that it had been injuriously affected by exposure to the elements or in any other manner. The testimony of the witnesses called by the defendants with respect to the mixing of the mortar was not definite with respect to the proportions of material used, and it did not relate to all the mortar mixed or identify any of the mortar in which it is now claimed that unsuitable lime furnished by plaintiff was used. One of the employés of the defendants, who mixed the mortar, testified that the proportions of the materials used in the mortar which "was put directly on the laths was a pail and a half of goat's hair and ten or twelve shovels full of sand to a barrel of lime." He was then asked if he meant shovels full of sand or barrels full of sand, and he answered, "Each barrel, twelve shovels full." And he further testified on the same subject, "Each barrel of lime to twelve shovels full of sand." The plaintiff testified that the proper proportion of lime and sand is six barrels of sand to one of lime. No witness testified to precisely the proportions of materials used in mixing any of the mortar which fell. It is improbable that a dealer in this kind of material would find it profitable, even if so disposed, to open the packages and substitute other lime or mix other lime with the Rockland lime, and the evidence in this case is not sufficient to warrant the making of that claim. It probably influenced the jury, for the claim is made here, and doubtless was upon the trial, that the plaintiff substituted other material for Rockland lime. It is not claimed that the material as received in the original packages varied, and no theory is presented to account for one barrel of this lime being good and another not good. It is far more probable, we think, that there was carelessness or incompetency in mixing the mortar, with respect to the proportions of materials used.

The defendants also pleaded an accord and satisfaction. This defense was based upon an assignment of a claim which they had against the firm of Weil & Mayer, upon which they had brought an action which was then pending. The claim was for $1,600, and the assignment was made on the 22d day of October, 1902. The plaintiff claims that it was taken as collateral security for the balance of account on which this action is based, which was the same on that day as on the date already stated, and the defendants claim that it was taken in full satisfaction thereof. It is in writing and unconditional, and it recites that it was given in consideration of the delivery by the plaintiff to the defendants of satisfactions of certain mechanics' liens which he had filed against them. It appears that at the time of receiving this assignment the plaintiff had filed four mechanics' liens against the defendants for the balance of account which is sought to be recovered here, and that on that day he executed and delivered to the defendants satisfaction pieces of those liens. The court submitted to the jury the question as to whether the assignment was taken in consideration of the claims or only as security, and it cannot be accurately determined from the verdict, as rendered, which way the jury decided the question, although, if they agreed with the defendants' contention on that point, it would seem that there could be no counterclaim, for according to their testimony that was intended to constitute a settlement of all matters of difference between the parties, and we think the trial justice in-

tended to so instruct the jury, but this point was not made very clear. The defendants were permitted to show, over objection and exception duly taken by plaintiff on the express statement of their counsel, that the evidence bore upon the issue as to whether the assignment was taken in satisfaction or only as security; that thereafter the plaintiff continued to deal with the defendants separately, after the dissolution of their firm, and this, although it appeared that the capacity in which the plaintiff therefore dealt with them was as president of a corporation. This evidence had no material bearing upon the issues presented, and while it might not, standing alone, require a reversal, it is not to be entirely overlooked. Ordinarily, of course, it is not error for the court to refuse to instruct the jury what will be the consequences of their verdict, but on these facts we are of opinion that the court should have instructed the jury, as requested by counsel for the plaintiff, that, even though the jury should find that the assignment was only taken as security and thus find for the plaintiff on that issue, the plaintiff would still be obliged to credit upon the judgment recovered in this action any amount which he realized on the claim assigned. The request was not drafted with technical accuracy, for it should have stated that it would be the duty of the plaintiff to apply it on the judgment, if not then satisfied, as far as necessary, and account to defendants for the balance, or for all if not received until after satisfaction of the judgment. However, by this request the attention of the court was drawn to the proposition, and the case is so involved that we think the jury should have been informed that a verdict for the plaintiff would not enable him to have a double recovery on the claim, which was the purpose of the request made.

The judgment and order, therefore, should be reversed, and a new trial granted, with costs to appellant to abide the event.

McLAUGHLIN, HOUGHTON, and SCOTT, JJ., concur. INGRAHAM, J., concurs on the first ground considered in the opinion of LAUGHLIN, J.